**LAW OFFICE OF RICHARD JACOBS**
Richard Jacobs, Esq.
13512 Hatteras St.
Valley Glen, CA 91401
*Tel:* (818) 216-0663, *facsimile (*818)780-8696
richardjacobslaw@gmail.com

Attorneys for Plaintiff Big Washington LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG WASHINGTON LLC, a California Limited Liability Company;<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW HINTZE; IRON ROCK VENTURES, LLC, a Nevada LLC; SUPERDUDES LLC, a Delaware LLC.; DAY TO DAY IMPORTS, INC. d.b.a. COVERSHIELD, a California Corporation; VIRGIN SCENT INC., a California Corporation; YEHUDA NOUROLLAH; AKIVA NOUROLLAH; YOSEF NOUROLLAH; YAAKOV NOUROLLAH; and DOES 1-100,<br><br>Defendants | Case No.:   2:23-CV-09627<br><br>**COMPLAINT**<br>**JURY DEMANDED** |

COMPLAINT - 1

Plaintiff complains against Defendants as follows:

## PARTIES

1.      Plaintiff Big Washington LLC, is a California Limited Liability Company.

2.      Plaintiffs are informed and believe, and thereon allege, that Defendant Matthew Hintze is an individual doing business in the County of Kern in the State of California.

3.      Plaintiffs are informed and believe, and thereon allege, that Defendant Iron Rock Ventures, LLC is a Nevada LLC with its principle place of business in the County of Kern in the State of California.

4.      Plaintiffs are informed and believe, and thereon allege, that Defendant Superdudes LLC is a Delaware LLC with its principle place of business in the County of Kern in the State of California.

5.      Plaintiffs are informed and believe, and thereon allege, that Defendant Day To Day Imports, Inc. D.B.A. Covershield is a California Corporation with its principle place of business in the County of Kern in the State of California.

6.      Plaintiffs are informed and believe, and thereon allege, that Defendant Virgin Scent Inc is a California Corporation with its principle place of business in the County of Kern in the State of California.

7.      Plaintiffs are informed and believe, and thereon allege, that Defendant Yehuda Nourollah is an individual doing business in the County of Kern in the State of California.

8.      Plaintiffs are informed and believe, and thereon allege, that Defendant Akiva Nourollah is an individual doing business in the County of Kern in the State of California.

9.     Plaintiffs are informed and believe, and thereon allege, that Defendant Yosef Nourollah is an individual doing business in the County of Kern in the State of California.

10.     Plaintiffs are informed and believe, and thereon allege, that Defendant Yaakov Nourollah is an individual doing business in the County of Kern in the State of California.

11.     The true names and capacities of defendants named as Doe 1 through Doe 100, inclusive, are presently unknown to Plaintiffs.  Plaintiffs will amend this complaint, setting forth the true names and capacities of these fictitious defendants when they are ascertained.  Plaintiffs are informed and believe, and on that basis alleges, that each of the fictitious defendants has participated in the acts alleged in this complaint to have been done by the named defendants.

12.     Plaintiffs are informed and believe, and on that basis allege, that at all relevant times each of the defendants, whether named or fictitious, was the agent or employee of each of the other defendants, and in doing the things alleged to have been done in the Complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

13.     Plaintiffs are informed and believe, and on that basis allege, that at all relevant times each of the defendants, whether named or fictitious, was the alter-ego of each of the other defendants, and in doing the things alleged to have been done in the Complaint, acted with a unity of interest such that the separate personalities of the corporate entity and the individual defendants do not in reality exist and honoring the separate entities would result in an inequitable result.

## **VENUE**

14.     Venue is proper in Kern County because the action is centered around the properties located at 99 and 120 Washington Street, Bakersfield, CA (the "Property".)

## **BRIEF SUMMARY OF THE CASE**

15.     This case is a RICO case centered on the lease of warehouse space in Bakersfield, California.  The individuals behind the corporate entities and the corporate entities themselves have a long legal history that has now been uncovered including, but not limited to:

    a.  The largest fine in the history of the Los Angeles Water Resources Control Board [$17,000,000.00] for violations of the Clean Water Act and the Porter-Cologne Water Quality Control Act for discharging over six million gallons of polluted water including hazardous substances into the Dominguez Channel Estuary, failure to mitigate their actions, and discharging without the required permits;

    b.  Criminal perjury charges in Florida Circuit Court;

    c.  Class action payouts due to the sale of carcinogenic beauty products in Florida Federal Court;

    d.  Refusal of the Bankruptcy Courts to grant discharge due to the hiding of assets; and

    e.  Determination by the Bankruptcy Court that there is no attorney-client privilege due to crime-fraud.

16.     Unfortunately, Plaintiff is the latest victim of Defendants' fraudulent (and potentially criminal) schemes as set forth below.

## **GENERAL ALLEGATIONS**

17.     Plaintiff owns the Property.  Plaintiff owned the Property at all times relevant to this lawsuit.

18.     In late 2021, Superdudes began negotiating to lease portions of the Property from Plaintiff.

19.     During negotiations, Superdudes submitted financial statements and a narrative about their business that included that they supplied high quality items to major retailers including Walmart and Target.

20.     Superdudes represented to Plaintiff that their business was highly profitable and needed to expand from their primary 100,000 foot space in Perris, California.

21.     Superdudes represented that its financials were strong based upon its "subsidiary" Virgin Scent.

22.     What Superdudes did not disclose was that Virgin Scent was in the midst of a federal class action for selling home health products contaminated with benzene, a cancer-causing chemical. (*Brodowicz v. Walmart et al.* Southern District of Florida Case #  21-cv-60643-RKA.)

23.     This lawsuit had been ongoing since March 2021.

24.     On or about January 3, 2022, Plaintiff leased portions of the Property to Defendant Superdudes.  (Exhibit A.)

25.     The lease included a no subletting clause.  Notably, the lease was solely for Superdudes' use, not for any other affiliated entities' use.

26.     Almost immediately, Supderdudes began using warehouses on the neighboring property (99 Washington) which is also owned by Plaintiff without Plaintiff's permission.  Superdudes began storing various items without permission in warehouses it had not rented out and started using the yard of 99 Washington without permission.

27.     The condition and manner of trespassed goods was alarming to Plaintiff as it appeared to be not just disorganized, but also unsafe.

28.     This led to the Kern County Fire Inspector determining that Defendants' use was not in compliance and was "the worst fire hazard he had ever seen."

29.     Notably, Superdudes apparently registered itself with the City of Bakersfield as performing "Storage and Warehousing Space" at 99 Washington. This was during the period where Superdudes was using portions of 99 Washington without permission.

30.     Plaintiff has now learned the following:

    a.  Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah and Yaakov Nourollah are brothers with long histories of litigation.

    b.  Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah and Yaakov Nourollah are the principles of Supderdudes.

    c.  Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah and Yaakov Nourollah are also the principles of Day To Day Imports.

    d.  Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah and Yaakov Nourollah are also the principles of Virgin Scent.

    e.  Plaintiff is informed and believes, and thereon alleges, that Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, Yaakov Nourollah, and Superdudes sublet various portions of the Property (including the portions they did not even rent) to Day To Day Imports and Virgin Scent.

31.     This becomes important because, upon information and belief, Day To Day Imports and Virgin Scent could never obtain warehouse space such as the space being rented to Superdudes.

    a.  Virgin Scent could never obtain warehouse space due to its history of selling home health products contaminated with benzene, a cancer-causing chemical.  (*Brodowicz v. Walmart et al.* Southern District of Florida Case #  21-cv-60643-RKA.)

b. Plaintiff is informed and believes, and thereon alleges, that Virgin Scent has settled its most recent lawsuit for millions of dollars.  (*Brodowicz v. Walmart et al.* Southern District of Florida Case #  21-cv-60643-RKA.)

c. It also has been sued by various other alleged creditors and victims, including approximately half a dozen other federal cases in the Central District of California alone.  (*See e.g. Triglav-Edelvais Usa Llc V. Virgin Scent Inc* CACD Case #2:22-cv-08362-FMO-PVC; *Acceptance Casualty Insurance Company v. Virgin Scent Inc.* CACD Case #2:21-cv-07263-DMG-AS; *Heinlein Plastik-Technik GMBH v. Virgin Scent Inc.* CACD Case #2:22-cv-06634-JFW-AGR; *Lauren Slaughter v. Virgin Scent, Inc. et al* CACD Case #2:21-cv-02875-PSG-E; *Kaila Saiki et al v. Virgin Scent, Inc.* CACD Case #2:21-cv-02948-VAP-E; and *Grain Processing Corporation v. Virgin Scent, Inc.* CACD Case #2:22-mc-00239-UA.)

d. As for Day To Day Imports, they also are facing large amounts of litigation and other legal difficulties.

e. Day To Day Imports (and Virgin Scent) allegedly created chemical run-off into the Dominguez Channel causing massive pollution.

f. Plaintiff is unaware of whether the fines have been finalized, but Day To Day Imports and Virgin Scent face **$17,000,000.00** in penalties from the Water Resources Control Board, which is the largest amount of penalties in the Board's history.

g.  The fines are based on alleged discharge of polluted water and hazardous substances, failure to comply with cleanup and abatement orders, and failure to obtain a discharge permit.

h.  Day To Day Imports is also a defendant in numerous federal lawsuits.

32.   When Superdudes negotiated the lease of the warehouses, they presented various financial documents.

33.   However, they did not disclose their affiliation with Day To Day Imports, nor their intent to continue the work of Day To Day Imports and Virgin Scent using Plaintiff's warehouses.

34.   Had Plaintiff known, Plaintiff never would have leased the warehouses to Superdudes given the history of catastrophic environmental damage and lawsuits from unpaid creditors.

35.   Plaintiff does not know whether Matthew Hintze was involved from the beginning or only after the lease began, but if Hintze was involved at any point prior to the lease in a significant way, Plaintiff also would not have leased to Superdudes for that reason as explained below.

36.   Starting in October 2022, Superdudes stopped paying any rent for the Property.

37.   Plaintiff was forced to initiate litigation against Superdudes for unlawful detainer.  Plaintiff has thus far been unable to recover possession of the Property due to Defendants' actions.

38.   As a result of the litigation and other research, Plaintiff has now learned that on or about January 20 2023, Defendant Iron Rock Ventures LLC purchased the assets stored at the Property by the other Defendants.

39.   Iron Rock LLC was formed by an asset shielding corporation in Nevada by a group whose sole stated purpose is to shield assets and frustrate

creditors. Plaintiff is informed and believes, and thereon alleges, that Iron Rock LLC has no business other than holding the assets for Superdudes LLC, Day To Day, and Virgin Scent while leaving the liabilities with the respective companies.

40.     A second aptly named entity, Covershield LLC, was also involved in the purchase. The purpose of this entity appears to be to cover up assets and wrongdoing and to shield Superdudes from liability.

41.     Nonetheless, Iron Rock Ventures continued storing the assets on the Property without permission from Plaintiff.

42.     Having now looked into Iron Rock Ventures, Plaintiff has learned the following.  These are based upon information and belief, which is based upon public records both through the Courts and the California and Nevada Secretary of State's offices.

    a.  Iron Rock Ventures is run, and potentially owned, by Matthew Hintze.

    b.  In a phone call with Plaintiff, Matthew Hintze baselessly described himself as a wealthy and sophisticated university professor who owns real estate all over the United States, including valuable property in Santa Barbara, California.

    c.  Matthew Hintze has been the subject of numerous pieces of litigation and is one of the few Americans to ever be criminally charged with perjury in an official proceeding.  (STATE OF FLORIDA -VS- HINTZE, MATTHEW BRUCE [Alachua County Circuit Court Case # 2018 CF 003249 A.])

    d.  This charge stemmed from the bankruptcy of a prior business he ran named TutoringZone, LC.  (570 B.R. 369 (Bankr. N.D. Fla. 2017).)

e. Matthew Hintze and his wife Larina Hintze fraudulently obtained investment in his business and then sold the business's assets to a related party in order to cover and shield liabilities and dodge obligations to his investors and creditors. He then attempted to discharge his obligations with a bankruptcy. The business was named TutoringZone, LLC

f. During the adversary proceeding in that matter, Matthew Hintze (and his wife Larina Hintze and his mentor Christopher James who ran the related business) were accused of fraudulently transferring assets out of TutoringZone, LLC into a new one after bringing large amounts of outside investors' money into the older company. (Case No. 12–10462–KKS Adv. No. 13–01007–KKS.)

g. During this adversary proceeding, Matthew Hintze and his attorney were subject to a ruling by the Federal Court that there was no attorney-client privilege due to the crime-fraud exception. (*Spence v. Hintze [In re Hintze]* 570 B.R. 369 (Bankr. N.D. Fla. 2017).)

h. The Bankruptcy Court also found that "The unrefuted facts show that with intent to hinder, delay or defraud creditors, Plaintiffs in particular, [Hintze] caused their wholly owned entity, TZ1, to transfer its most valuable assets to a friendly creditor within a year prior to filing bankruptcy. By doing so, [Hintze] destroyed the value of their membership interest in TZ1. [Hintze] purposefully hid the transfer from Plaintiffs. [Hintze] employed TZ1 to mislead and work a fraud upon Plaintiffs. [Hintze] failed to bring forward enough credible

evidence to dissuade the Court from denying their discharge. Having considered the trial evidence, the credibility of the witnesses, the facts determined on summary judgment, the written closing arguments, proposed findings of fact and summaries of evidence, and having heard argument of counsel, as announced in open Court on October 6, 2016, judgment shall be entered for Plaintiffs. [Hintze's] discharges will be denied pursuant to 11 U.S.C. § 727(a)(2)(A)." (*Spence v. Hintze [In re Hintze]* 570 B.R. 369 (Bankr. N.D. Fla. 2017.))

i. This later led to the criminal referral as well for Hintze, who was then charged with criminal perjury in an official proceeding. (STATE OF FLORIDA -VS- HINTZE, MATTHEW BRUCE [Alachua County Circuit Court Case # 2018 CF 003249 A.])

j. Investigations have revealed that Matthew Hintze and his wife Larina Hintze have no discoverable assets and are unable to find stable employment. Matthew Hintze's his career as a tutor for college students was derailed by criminal charges described above and Larina Hintze website is defunct and Plaintiff is informed and believes, and thereon alleges, that she is not gainfully employed.

k. The above is relevant because the fraudulent sale and purchase of Superdudes goods is similar to a striking degree. Further, Mr. Hintze's description of himself as a successful and wealthy professor shows that his penchant for lying has not diminished after being charged with criminal perjury.

43.    Plaintiff is informed and believes, and thereon alleges, that Hintze and Iron Rock now continue to use the Property and Superdudes, Day To Day, and Virgin Scent for fulfillment via U.S. Mail and other delivery services despite allegedly having separately purchased and taken over the assets of Superdudes, Day To Day, and Virgin Scent.

## FIRST CAUSE OF ACTION
## (Civil RICO)
## (Against ALL DEFENDANTS)

44.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 40.

45.    A civil RICO action requires predicate acts.  As shown in more detail above, and as enumerated here, the predicate acts have been satisfied.

46.    **Pattern –** Plaintiff must show a pattern of racketeering activity.  This can be either a "closed ended continuity" or an "open ended continuity".

47.    For a closed ended continuity, the Plaintiff must show that the related predicate acts were committed over a substantial period of time.  For an open ended continuity, the Plaintiff must show that there is a threat of continuing criminal activity that extends beyond the initial period of time when the predicate acts were originally committed.

48.    In this case, both are shown.

49.    For a closed ended continuity, the acts are simple:

    a.    Trespass – Defendants Superdudes, Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, Yaakov Nourollah leased the Property from Plaintiff so that their other businesses (Day To Day and Virgin Scents) could operate without informing the landlord of the various issues associated with those businesses. The lease prohibits subleasing or use by others, and thus any

other occupants (such as Day To Day and Virgin Scents) were trespassers.  This trespass was simultaneously a crime, a breach, and a tort.

b. Embezzlement/Fraudulent Transfers – Plaintiff is informed and believes, and thereon alleges, that Superdudes, Virgin Scents, and Day To Day all transferred their assets to Iron Rock while leaving behind assetless shells of companies to defraud their creditors (including the California State Water Resources Control Board.)  Notably, Superdudes, Virgin Scents, and Day To Day have all avoided Bankruptcy Court, presumably to avoid any oversight of the asset transfers.[1]

c. Mail Fraud – Plaintiff is informed and believes, and thereon alleges, that Superdudes (and later Iron Rock) used the Property to distribute products from the cancer causing Virgin Scents and the polluting Day To Day Imports under their own names to hide the origin of the goods they were distributing.  They used the mail to distribute the goods, thereby used the mail in furtherance of the scheme.

50.    For open ended, the facts are also simple.

a. Trespass – Defendant Iron Rock continues to use the Property (despite not having any lease or possessory interest) via Superdudes to conduct business for Superdudes, Day To Day, and Virgin Scents.

---

[1] The asset transfer company overseeing the alleged transactions brags on its website about structuring transactions around the most friendly jurisdictions with the most lenient fraudulent transfer laws on their website.

b.  Mail Fraud – Plaintiff is informed and believes, and thereon alleges, that Iron Rock continues to use the Property to distribute products from the cancer causing Virgin Scents and the polluting Day To Day Imports under its own name to hide the origin of the goods they are distributing.  They use the mail to distribute the goods, thereby using the mail in furtherance of the scheme.

51.  **Enterprise –** Plaintiff must also show that there is an enterprise rather than a single individual involved.  This can be shown in any number of ways, but this fact pattern appears to fit several.  The most obvious example is an "associated in fact enterprise."

52.  An associated in fact enterprise is a "group of persons [including corporate entities] associated together for a common purpose of engaging in a course of conduct.

53.  As shown above, each of the Defendants is a part of the enterprise at issue in various capacities.

**54.  Conduct –** The conduct element requires that the defendant have some part in directing the affairs of the enterprise.  Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required.

55.  Fortunately in this case, the individuals involved have documented both that they are all in leadership positions within the various entities and that they are personally involved in the conduct set forth above.

56.  **Racketeering Activity –** The final element is that the relevant conduct must include at least one of the indictable predicate acts listed in 18 U.S.C. § 1961.  This list includes:

a. Any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

b. Any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), **section 932 (relating to straw purchasing)**, section 933 (relating to trafficking in firearms), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), **section 1341 (relating to mail fraud)**, section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465

(relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), **section 1511 (relating to the obstruction of State or local law enforcement),** section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), **section 1951 (relating to interference with commerce, robbery, or extortion)**, section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), **section 1956 (relating to the laundering of monetary instruments)**, **section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity)**, section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of

stolen motor vehicles), **sections 2314 and 2315 (relating to interstate transportation of stolen property),** section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic),[2] sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials),

c.  Any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds),

d.  Any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States,

e.  Any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or

f.  (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

57.  As set forth above, the following sections of racketeering activity are all implicated:

a.  Section 932 (relating to straw purchasing) – Using Iron Rock to improperly avoid creditor claims

b.  Section 1341 (relating to mail fraud) – Mailing goods from Superdudes, Day To Day, and Virgin Scents despite having purportedly having sold all of the assets to Iron Rock

c.  Section 1511 (relating to the obstruction of State or local law enforcement) – Fraudulent transfers to avoid the State Water Board fines

d.  Section 1951 (relating to interference with commerce, robbery, or extortion) - Mailing goods from Superdudes, Day To Day, and Virgin Scents despite having purportedly having sold all of the assets to Iron Rock

e.  Section 1956 (relating to the laundering of monetary instruments) – Assuming that the "asset protection" by Iron Rock is deemed unlawful, the use of Iron Rock to collect

payment while avoiding the creditors of Superdudes, Day To Day, and Virgin Scents would constitute technical money laundering

    f.  Section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) – Assuming that the "asset protection" by Iron Rock is deemed unlawful, the use of Iron Rock to collect payment while avoiding the creditors of Superdudes, Day To Day, and Virgin Scents would constitute technical money laundering

    g.  Sections 2314 and 2315 (relating to interstate transportation of stolen property) – Assuming that the "asset protection" by Iron Rock is deemed unlawful, the use of Iron Rock to distribute the assets of Superdudes, Day To Day, and Virgin Scents would constitute stolen property

58.    While any one of these can serve as the basis for the Racketeering Activity element, combined they show a strong and disturbing pattern.

## **SECOND CAUSE OF ACTION**

## **(Trespass)**

## **(Against ALL DEFENDANTS)**

59.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 55.

60.    Plaintiff owns the Property.

61.    Defendants intentionally, recklessly or negligently entered Plaintiff's property.

62.    Defendants did not give permission for the entry.

63.    Plaintiff was harmed, and continues to be harmed.

64.    Defendants' conduct is a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

### (Nuisance)

### (Against ALL DEFENDANTS)

65.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 61.

66.    Plaintiff owns the Property.

67.    Defendants, by acting or failing to act, created a condition or permitted a condition to exist that is an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.

68.    Defendants' conduct in acting or failing to act was intentional and unreasonable, or unintentional but negligent or reckless.

69.    This condition substantially interferes with Plaintiff's use or enjoyment of its land.

70.    An ordinary person would reasonably be annoyed or disturbed by Defendants' conduct.

71.    Plaintiff did not consent to Defendants' conduct.

72.    Plaintiff was harmed.

73.    Defendants' conduct is a substantial factor in causing Plaintiff's harm.

74.    That the seriousness of the harm outweighs the public benefit of Defendants' conduct.

## FOURTH CAUSE OF ACTION

### (Breach of Contract)

### (Against SUPERDUDES [Direct] and YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH & YAAKOV NOUROLLAH [Alter Ego])

75.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 71.

76.     Plaintiff and Superdudes entered into a contract.

77.     Plaintiff did all, or substantially all, of the significant things that the contract required it to do or was excused from performing.

78.     Plaintiff performed all of the conditions required by the contract or was excused or waived from performance.

79.     Plaintiff was harmed.

80.     Defendants' breach of the contract was a substantial factor in causing Plaintiff's harm.

### FIFTH CAUSE OF ACTION

### (Breach of the Implied Covenant)

### (Against SUPERDUDES [Direct] and YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH & YAAKOV NOUROLLAH [Alter Ego])

81.     Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 77.

82.     Plaintiff and Superdudes entered into a contract.

83.     Plaintiff did all, or substantially all, of the significant things that the contract required it to do or was excused from performing.

84.     All of the conditions required for Defendants' performance had occurred or were excused.

85.     Defendant acted in such a way as to prevent Plaintiff from receiving the benefits under the lease.

86.     By doing so, Defendant did not act fairly and in good faith.

87.     Plaintiff was harmed.

### SIXTH CAUSE OF ACTION

### (Intentional Interference With Contract)

**(Against IRON ROCK VENTURES, LLC; DAY TO DAY IMPORTS, INC. d.b.a. COVERSHIELD; VIRGIN SCENT INC., a California Corporation; YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH; & YAAKOV NOUROLLAH)**

88.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 84.

89.    There was a contract between Plaintiff and Superdudes.

90.    Defendants knew of the contract between Plaintiff and Superdudes.

91.    Defendants' conduct prevented performance or made performance more expensive or difficult.

92.    Defendants intended to disrupt the performance of this contract or knew that disruption of performance was certain or substantially certain to occur.

93.    Plaintiff was harmed.

94.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

### SEVENTH CAUSE OF ACTION

**(Negligent Interference With Prospective Economic Relations)**

**(AGAINST IRON ROCK VENTURES, LLC; DAY TO DAY IMPORTS, INC. D.B.A. COVERSHIELD; VIRGIN SCENT INC., A CALIFORNIA CORPORATION; YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH; & YAAKOV NOUROLLAH)**

95.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 91.

96.    Plaintiff and Superdudes were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiff..

97.    Defendants knew or should have known of the relationship between Plaintiff and Superdudes.

98.     Defendants knew or should have known that this relationship would be disrupted if they failed to act with reasonable care..

99.     Defendants failed to act with reasonable care.

100.    Defendants engaged in wrongful conduct.

101.    The relationship was disrupted.

102.    Plaintiff was harmed.

103.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## EIGHTH CAUSE OF ACTION

### (Intentional Interference With Prospective Economic Relations)

### (Against IRON ROCK VENTURES, LLC; DAY TO DAY IMPORTS, INC. d.b.a. COVERSHIELD; VIRGIN SCENT INC., a California Corporation; YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH; & YAAKOV NOUROLLAH)

104.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 100.

105.    Plaintiff and Superdudes were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiff..

106.    Defendants knew or should have known of the relationship between Plaintiff and Superdudes.

107.    Defendants engaged in wrongful conduct.

108.    By engaging in this conduct, Defendants intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur..

109.    The relationship was disrupted.

110.    Plaintiff was harmed.

111.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## NINTH CAUSE OF ACTION

## (Fraud)

## (Against SUPERDUDES [Direct] and

## YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH & YAAKOV NOUROLLAH [Alter Ego])

112.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 108.

113.    Plaintiff and Defendants Superdudes (Directly) and Defendants Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah and Yaakov Nourollah (Indirectly) were in a landlord tenant relationship.

114.    Defendants disclosed some facts to Plaintiff [the status of Superdudes], but intentionally failed to disclose other facts [the affiliation with, intended use by, and various legal issues of Day To Day and Virgin Scents], making the disclosure deceptive.

115.    Plaintiff did not know of the concealed facts.

116.    Defendants intended to deceive Plaintiff by concealing the facts.

117.    Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.

118.    Plaintiff was harmed.

119.    Defendants' concealment was a substantial factor in causing Plaintiff's harm.

## TENTH CAUSE OF ACTION

## (Violations Of The Uniform Fraudulent Transfer Act)

## (Against All Defendants)

120.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 116.

121.    Plaintiff is informed and believes, and thereon alleges, that when the individual Defendants used the corporate Defendants to shift assets from Superdudes, Day To Day and Virgin Scent to Ironrock, Ironrock did not pay Superdudes, Day To Day and Virgin Scent reasonably equivalent consideration and was engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

122.    Plaintiff is further informed and believes, and thereon alleges, that Superdudes did not receive reasonably equivalent consideration and intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

123.    Plaintiff is further informed and believes, and thereon alleges, that Superdudes did not receive reasonably equivalent value and was insolvent at that time or became insolvent as a result of the transfer.

## PUNITIVE DAMAGES REQUEST

124.    Plaintiff incorporates each of the allegations set forth in paragraphs 1 through 120.

125.    Plaintiff is informed and believes, and thereon alleges, Defendants acted in a despicable manner, intending to vex, injure and annoy Plaintiff while enriching themselves and have been guilty of oppression, fraud and malice, thus warranting an award of punitive damages, in an amount according to proof at trial.

## PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

1.      For costs and fees of the suit (contractual attorney's fees only as to Superdudes; *Prentice* and/or statutory fees as to all Defendants)

2.      For general and actual damages;

3.    For exemplary damages according to proof;

4.    For injunctive relief;

5.    For any other, further, or different relief as the Court may deem proper.

Dated this 25th day of July, 2023

_____

Richard B. Jacobs
Attorney for Plaintiff